1  Jeff D. Friedman (173886)
   HAGENS BERMAN SOBOL SHAPIRO LLP
2  715 Hearst Avenue, Suite 202
   Berkeley, CA 94710
3  Telephone: (510) 725-3000
   Facsimile: (510) 725-3001
4  jefff@hbsslaw.com

5  [Additional counsel listed on signature page]

6  Attorneys for Plaintiff and the Proposed Class

7

8

9                UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11                                                CV 08      0309

   CARROLL CUT-RATE FURNITURE, on      ) No.
12 behalf of itself and all others similarly situated, )
                                        ) CLASS ACTION COMPLAINT
13                          Plaintiff,  )
                                        )
14         v.                           )
                                        )
15 CHUNGHWA PICTURE TUBES, LTD.,        ) DEMAND FOR JURY TRIAL
   CHUNGHWA PICTURE TUBES               )
16 (MALAYSIA) SDN. BHD., HITACHI, LTD., )
   HITACHI AMERICA, LTD., HITACHI ASIA, )
17 LTD., IRICO GROUP CORP., IRICO       )
   DISPLAY DEVICES CO., LTD., LG        )
18 ELECTRONICS, INC., MATSUSHITA        )
   ELECTRIC INDUSTRIAL CO, LTD.,        )
19 PANASONIC CORPORATION OF NORTH       )
   AMERICA, ORION ELECTRIC CO., LTD.,   )
20 ORION AMERICA, INC., KONINKLIJKE     )
   PHILIPS ELECTRONICS N.V., PHILIPS    )
21 ELECTRONICS NORTH AMERICA,           )
   SAMSUNG SDI CO., LTD., SAMSUNG SDI   )
22 AMERICA, INC., SAMTEL COLOR, LTD.,   )
   THAI CRT COMPANY, LTD., TOSHIBA      )
23 CORPORATION, BEIJING-MATSUSHITA      )
   COLOR CRT COMPANY, LTD., LP          )
24 DISPLAYS INTERNATIONAL, LTD. and     )
   MATSUSHITA TOSHIBA PICTURE           )
25 DISPLAY CO., LTD.,                   )
                                        )
26                          Defendants. )
                                        )
27 _____

28

010013-11 217995 V1

# I. SUMMARY OF THE CASE

Plaintiff Carroll Cut-Rate Furniture, individually and on behalf of the Plaintiff Class described below, brings this civil action against Defendants for damages and injunctive relief under the antitrust laws of the United States. Defendants are manufacturers of televisions, computer monitors, and other electronic devices containing cathode ray tubes ("CRTs"). Plaintiff alleges that Defendants conspired to raise, maintain, and stabilize the price of CRTs and CRT Products, as defined below, sold in the United States from January 1, 1995 to the present. Plaintiff further alleges that Defendants fraudulently concealed their price-fixing conspiracy from Plaintiff and members of the Class. As a result of Defendants' unlawful conduct, Plaintiff and members of the proposed Class paid higher prices for CRT Products than what they would have paid in a competitive market.

# II. JURISDICTION AND VENUE

1. Plaintiff brings this action to obtain injunctive relief and to recover damages, including treble damages, costs of suit and reasonable attorneys' fees, premised on Defendants' violation of the Sherman Act, 15 U.S.C. § 1.

2. The Court has jurisdiction over the subject matter of this action pursuant to Sections 4(a) and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, and 28 U.S.C. §§ 1331 and 1337. Venue is proper in this district pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391(b), (c) and (d) because a substantial part of the events giving rise to Plaintiff's claims occurred, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this District, and one or more of the Defendants reside in this District.

3. By virtue of their nationwide contacts and activities, Defendants are subject to the jurisdiction of this Court. Alternatively, there is jurisdiction over foreign Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2).

# III. DEFINITIONS

4. The relevant time period is from at least January 1, 1995 to the present ("Class Period").

CLASS ACTION COMPLAINT                - 1 -

010013-11 217995 V1

5. The term "CRT Products," as used in this complaint, means any device or product containing a cathode ray tube ("CRT"), including, but not limited to, televisions and computer monitors.

6. References made herein to any corporation include any predecessors, successors, parents, subsidiaries, affiliates and divisions of that corporation.

## IV. PARTIES

### A. Plaintiff

7. Plaintiff Carroll Cut-Rate Furniture is a family owned and operated business located at 222 Boston Post Road, West Haven, CT. Plaintiff purchased CRT Products directly from one or more Defendants during the Class Period and suffered injury as a result of Defendants' unlawful conduct.

### B. Defendants

#### Chunghwa

8. Defendant CHUNGHWA PICTURE TUBES, LTD. is a Taiwanese company with its principal place of business at No. 1127, Heping Rd., Bade City, Taoyuan, Taiwan. The company was established in 1971 and by the early 1990s had become the world's leading CRT manufacturer. As of 2001, Chunghwa Picture Tubes, Ltd. remained one of the top two global manufacturers of CRTs. During the Class Period, Chunghwa Picture Tubes, Ltd. distributed and sold CRT Products throughout the United States.

9. Defendant CHUNGHWA PICTURE TUBES (MALAYSIA) SDN. BHD. ("Chunghwa Malaysia") is a Malaysian company with its principal place of business at Lot 1, Subang Hi-Tech Industrial Park, Batu Tiga, 4000 Shah Alam, Selangor Darul Ehsan, Malaysia. Chunghwa Malaysia is a wholly-owned and controlled subsidiary of Chunghwa Picture Tubes, Ltd. During the Class Period, Chunghwa Malaysia distributed and sold CRT Products throughout the United States.

10. Defendants CHUNGHWA PICTURE TUBES, LTD. and CHUNGHWA MALAYSIA are referred to collectively herein as "Chunghwa."

**Hitachi**

11. Defendant HITACHI, LTD. is a Japanese company with its principal executive office at 6-6, Marunouchi 1-chome, Chiyoda-ku, Tokyo, 100-8280, Japan. Hitachi was a major manufacturer of CRT products during the relevant time period and achieved a 20 percent share of the global market for color CRTs in the mid-1990s. During the Class Period, Hitachi, Ltd. distributed and sold CRT Products throughout the United States.

12. Defendant HITACHI AMERICA, LTD. ("Hitachi America") is a New York company with its principal place of business at 2000 Sierra Point Parkway, Brisbane, California. Hitachi America is a wholly-owned and controlled subsidiary of defendant Hitachi, Ltd. During the Class Period, Hitachi America distributed and sold CRT Products manufactured by Hitachi, Ltd. throughout the United States.

13. Defendant HITACHI ASIA, LTD. ("Hitachi Asia") is a Singaporean company with its principal place of business at 16 Collyer Quay, #20-00 Hitachi Tower, Singapore 049318. Hitachi Asia is a wholly-owned and controlled subsidiary of defendant Hitachi, Ltd. During the Class Period, Hitachi Asia distributed and sold CRT Products throughout the United States.

14. Defendants HITACHI, LTD., HITACHI AMERICA, and HITACHI ASIA are referred to collectively herein as "Hitachi."

**Irico**

15. Defendant IRICO GROUP CORPORATION is a Chinese entity located at 1 Caihong Road, Xianyang City, Shaanxi Province 712021. Irico Group was established in 1989 and is the parent company of subsidiaries that manufacture, distribute, and sell CRT Products. During the Class Period, Irico Group Corporation distributed and sold CRT Products throughout the United States.

16. Defendant IRICO DISPLAY DEVICES CO., LTD. is a Chinese entity located at No. 16, Fenghui South Road, West District Hitech Development Zone, Xi'an, SXI 710075. Irico Display Devices Co., Ltd. is a partially-owned subsidiary of Defendant Irico Group Corp. and China's leading CRT manufacturer. During the Class Period, Irico Display Devices Co., Ltd. distributed and sold CRT Products throughout the United States.

CLASS ACTION COMPLAINT            - 3 -

17. Defendants IRICO GROUP CORPORATION and IRICO DISPLAY DEVICES, CO., LTD. are referred to collectively herein as "Irico."

**LG Electronics**

18. Defendant LG ELECTRONICS, INC. ("LG Electronics") is a Korean entity headquartered at LG Twin Towers 20, Yeouido-dong, Yeongdeungpo-gu, Seoul, South Korea 150-721. In 2001, the company's Hong Kong-based joint venture LG.Philips Displays (described below) achieved a 24 percent share of the global market for both color picture tube and color display tube CRTs. (http://www.lgphilips-displays.com/english/newsroom/news_04_6_2002.html). During the Class Period, LG Electronics distributed and sold CRT Products throughout the United States.

**Matsushita**

19. Defendant MATSUSHITA ELECTRIC INDUSTRIAL CO., LTD. ("Matsushita Electric") is a Japanese entity located at 1006, Oaza Kadoma, Kadoma-shi, Osaka 571-8501, Japan. Matsushita Electric manufactures products under a number of names, including Panasonic, Victor Company of Japan, Ltd. (JVC) and Quasar. During the Class Period, Matsushita Electric distributed and sold CRT Products throughout the United States.

20. Defendant PANASONIC CORPORATION OF NORTH AMERICA ("Panasonic") is a Delaware corporation with its principal place of business at 1 Panasonic Way, Secaucus, New Jersey. Panasonic is a wholly-owned and controlled subsidiary of Defendant Matsushita Electric. During the Class Period, Panasonic distributed and sold CRT Products manufactured by Matsushita Electric.

21. Defendants MATSUSHITA ELECTRIC and PANASONIC are referred to collectively herein as "Matsushita."

**Orion**

22. Defendant ORION ELECTRIC CO., LTD. ("Orion Electric") is a Japanese company with its principal place of business at 41-1 Iehisa-cho Echizen-shi Fukui 915-8555, Japan. Orion Electric has at various times produced products under its own name and for a number of other electronics brand names, including Broksonic, Durabrand, Emerson, Sansui

and Toshiba. During the Class Period, Orion Electric distributed and sold CRT Products throughout the United States.

23. Defendant ORION AMERICA, INC. ("Orion America") is an Indiana corporation with its principal place of business at Highway 41 North, Orion Place, Princeton, Indiana. Orion America is a wholly-owned and controlled subsidiary of defendant Orion Electric Co., Ltd. During the Class Period, Orion America distributed and sold CRT Products throughout the United States.

24. Defendants ORION ELECTRIC CO., LTD. and ORION AMERICA are referred to collectively herein as "Orion."

**Phillips**

25. Defendant KONINKLIJKE PHILIPS ELECTRONICS N.V., which translates to Royal Philips Electronics ("Royal Philips"), is a Dutch entity with its principal place of business at Breitner Center, Amstelplein 2, 1096 BC Amsterdam, The Netherlands. As of late 2000, Royal Philips was the leading supplier of CRT Products in the global market (first in television tubes and fifth in computer monitors). The company's CRT business accounted for revenues of $3 billion in 1999. (http://findarticles.com/p/articles/mi_m0EIN/is_2000_Nov_27/ai_67364504). During the Class Period, Royal Philips distributed and sold CRT Products throughout the United States.

26. Defendant PHILIPS ELECTRONICS NORTH AMERICA CORP. ("Philips America") is a Delaware corporation with its principal place of business at 1251 Avenue of the Americas, New York, New York. Philips America is a wholly-owned subsidiary of Philips Holding USA, Inc., which is in turn a wholly-owned subsidiary of Defendant Royal Philips. During the Class Period, Philips America distributed and sold CRT Products manufactured by Royal Philips throughout the United States.

27. Defendants ROYAL PHILIPS and PHILIPS AMERICA are referred to collectively herein as "Philips."

CLASS ACTION COMPLAINT — - 5 -

010013-11 217995 VI

**Samsung**

28. Defendant SAMSUNG SDI CO., LTD. ("Samsung SDI") is a Korean company with its principal place of business at 575 Shin-dong, Youngtong-gu Suwon, Kyonggi, South Korea. Samsung SDI is a sister company of Korean electronics giant Samsung Electronics Co., Ltd. During the Class Period, Samsung SDI distributed and sold CRT Products throughout the United States.

29. Defendants SAMSUNG SDI AMERICA, INC. ("Samsung SDI America") is a California corporation with its principal place of business at 3333 Michelson Drive, Suite 700, Irvine, California. Samsung SDI America is a wholly-owned and controlled subsidiary of defendant Samsung SDI and maintains branch offices in San Diego and Chicago. During the Class Period, Samsung America distributed and sold CRT Products manufactured by Samsung SDI throughout the United States.

30. Defendants SAMSUNG SDI and SAMSUNG AMERICA are referred to collectively herein as "Samsung."

**Samtel**

31. Defendant SAMTEL COLOR LTD. ("Samtel") is an Indian company with its principal place of business at 52, Community Centre, New Friends Colony, New Delhi 110065, India. Samtel is part of Samtel Group, India's largest integrated manufacturer of displays and components for televisions, avionics and professional applications (http://www.samtelgroup.com/samtelnew/aboutus.htm) and has at various times supplied CRT Products to Defendants LG, Samsung, Philips, and Matsushita. During the Class Period, Samtel distributed and sold CRT Products throughout the United States.

**Thai CRT**

32. Defendant THAI CRT COMPANY, LTD. ("Thai CRT") is a Thai company located at 1/F 26 Siam Cement Road, Bangsue Dusit, Bangkok, Thailand. Established in 1986, Thai CRT is a subsidiary of Siam Cement Group and Thailand's first manufacturer of CRTs for color television makers. During the Class Period, Thai CRT distributed and sold CRT Products throughout the United States.

### Toshiba

33.     Defendant TOSHIBA CORPORATION ("Toshiba") is a Japanese company with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan. In 2001, Toshiba entered into an agreement with Defendant Orion whereby Orion would manufacture CRT Products under the Toshiba brand name. During the Class Period, Toshiba distributed and sold CRT Products throughout the United States.

### Joint Ventures

34.     Defendant BEIJING-MATSUSHITA COLOR CRT COMPANY, LTD. ("BMCC") is a Chinese company with its principal place of business at No. 9 Euxiangiao N. Rd., Dashanzi Chaoyang District, Beijing, China. BMCC is a joint venture between Defendant Matsushita Electric and the municipal government of Beijing. During the Class Period, BMCC distributed and sold CRT Products throughout the United States.

35.     Defendant LP DISPLAYS INTERNATIONAL, LTD. ("LP Displays") is a Hong Kong company located at 6th Floor, 1NG Tower, 308 Des Voeux Road Central, Sheung Wan, Hong Kong. LP Displays was formed in 2001 as a joint venture between Defendants LG Electronics and Koninklijke Philips Electronics N.V. Originally called LG.Philips Displays, the joint venture became an independent company in April 2007 and changed its name to LP Displays International, Ltd. During the Class Period, LP Displays distributed and sold CRT Products throughout the United States.

36.     Defendant MATSUSHITA TOSHIBA PICTURE DISPLAY CO., LTD. ("Matsushita-Toshiba") is a Japanese entity located at 1-1, Saiwai-cho, Takatsuki-shi, Osaka 569-1193, Japan. Matsushita-Toshiba began operations in 2003 as a joint venture that combined the CRT businesses of Defendants Matsushita Electric (64.5% ownership) and Toshiba Corporation (35.5% ownership), thereby becoming the largest manufacturer of 32 and 36 inch CRT Products in North America. (http://www.appliancedesign.com/CDA/Archives/c37efac942a38010 VgnVCM100000f932a8c0____). On March 30, 2007, Matsushita Electric announced that it was purchasing Toshiba's stake in the joint venture. (http://www.reuters.com/article/mergersNews/id

CLASS ACTION COMPLAINT                -7-

UST17170920070330). During the class period, Matsushita-Toshiba distributed and sold CRT Products throughout the United States.

## V.   AGENTS AND CO-CONSPIRATORS

37.   Various persons and/or firms not named as Defendants herein may have participated as co-conspirators in the violations alleged herein and may have performed acts and made statements in furtherance thereof. Each Defendant acted as the agent or joint venturer of or for other Defendants with respect to the acts, violations and common course of conduct alleged by Plaintiff.

## VI.   CLASS ACTION ALLEGATIONS

38.   Plaintiff brings this action both on behalf of itself and all others similarly situated (the "Class") pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and (b)(3). The Class is defined as follows:

> All individuals and entities that purchased CRT Products in the United States directly from one or more defendants or their affiliates between January 1, 1995 and the present. Excluded from the Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, and all governmental entities.

39.   Plaintiff does not know the exact number of class members, such information being in the exclusive control of Defendants. Due to the nature of the trade and commerce involved, however, Plaintiff believes that the Class is so numerous and geographically dispersed throughout the United States that joinder of all Class members is impracticable.

40.   There are questions of law or fact common to the class, including but not limited to the following:

   a.   Whether Defendants engaged in a contract, combination, or conspiracy to fix, raise, maintain, or stabilize prices of CRT Products sold in the United States;

   b.   Whether Defendants engaged in a contract, combination, or conspiracy to restrict output of CRT Products sold in the United States;

   c.   Whether Defendants' conduct caused the prices of CRT Products sold in the United States to be at artificially high levels;

CLASS ACTION COMPLAINT                           - 8 -

010013-11 217995 V1

      d.     Whether Plaintiff and other members of the Class were injured by Defendants' conduct, and, if so, the appropriate class-wide measure of damages for Class members; and

      e.     Whether Plaintiff and other members of the Class are entitled to injunctive relief and, if so, the nature and extent of such relief.

41. These and other questions of law and fact are common to the Class and predominate over any questions affecting only individual Class members.

42. These and other questions of law and fact are common to the Class and predominate over any questions affecting only individual Class members.

43. Plaintiff's claims are typical of the claims of the Class because Plaintiff directly purchased CRT Products from one or more of the defendants, all Class members were damaged by the same conspiracy alleged herein, and the relief sought by Plaintiff is common to the Class.

44. Plaintiff will fairly and adequately represent the interests of the Class in that Plaintiff is a direct purchaser of CRT Products and has no conflict with any other members of the Class. Furthermore, Plaintiff has retained competent counsel experienced in antitrust, class action, and other complex litigation.

45. Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

46. A class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy. Prosecution of this matter as a class action will eliminate the possibility of repetitive litigation and there is no significant difficulty to managing this case as a class action.

47. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying outcomes.

## VII. TRADE AND COMMERCE

48. During the Class Period, each Defendant sold CRT Products in the United States, in a continuous and uninterrupted flow of interstate and foreign commerce.

49. During the Class Period, Defendants collectively controlled a majority of the market for CRT Products, both globally and in the United States.

50. The business activities of the Defendants substantially affected interstate trade and commerce in the United States.

## VIII. FACTUAL ALLEGATIONS

51. Based on technology originally developed over a century ago, a CRT consists of a specialized glass tube inside of which images are produced by striking an electronic beam on a phosphorescent surface.

52. CRT Products include television sets, computer monitors, video game machines, video cameras, and just about any device or machine with a display screen.

53. CRT Products are manufactured in several standard sizes (*e.g.*, 27 inch televisions and 17 inch computer monitors) and the CRT Products manufactured, distributed and sold by Defendants during the Class Period are not qualitatively distinguishable in any material way.

54. Until the recent emergence of flat panel technology (LCD and plasma), CRT technology was omnipresent and used in virtually all electronic products containing displays. Total worldwide revenue in 1999 was estimated at $19.5 billion. (http://news.zdnet.com/2100-9595_22-812906.html).

55. Despite the reliability and cost advantages of CRT technology, the growing popularity (and decreasing costs) of flat panel televisions and computer monitors has substantially altered the display technology landscape and cut into sales of CRT Products. For example, in the first quarter of 2005, global LCD television sales were said to reach $10 billion, surpassing CRT television sales for the first time. *See* Michael Macedonia, "It's the End of the Tube as We Know It," *Computer Magazine* (June 2006) (accessed at http://www.computer.org).

56. The emergence and surging popularity of flat panel technology created a great deal of economic pressure in the CRT industry (http://news.zdnet.com/2100-9595_22-812906.html), creating an environment where CRT companies were willing to risk engaging in unlawful cartel behavior in order to maintain prices of their CRT Products at artificially high levels.

CLASS ACTION COMPLAINT - 10 -

57. The CRT industry exhibits classic characteristics of an oligopoly, with a relatively small number of companies controlling a majority of the global market. For instance, Defendants LP Displays, Samsung SDI, and Chunghwa were estimated to control nearly 54 percent of the world market in 2001, which was expected to increase to 62 percent in 2002 based on the departure of several Japanese companies from the CRT market. (http://www.digitimes.com/CD/CEO.asp?datePublish=2002/06/21&pages=CD&seq=300&sec=14).

58. The CRT industry also has high barriers to entry in that efficient manufacturing plants are costly and require significant research and development investments.

59. There was a good deal of consolidation and joint venture activity among Defendants during the Class Period. Examples include the 2001 joint venture between Defendants Royal Philips and LG Electronics that created what is now LP Displays; the 2001 agreement whereby Orion began manufacturing CRT Products for Toshiba; and the 2003 joint venture between Defendants Matsushita Electric and Toshiba into Matsushita Toshiba Picture Display.

60. The concentration of market share in the CRT industry helped create an environment for Defendants to implement their conspiracy. Joint ventures among Defendants for the manufacture and sale of CRT Products provided ongoing opportunities for Defendants to communicate on matters such as pricing, supply and manufacturing capacity.

61. Defendants also maintain common membership in various trade associations, which provided cover for their conspiracy. More specifically, several Defendants, including Chunghwa, Hitachi, and Samsung SDI belong to the Society for Information Display; Defendants Samsung SDI and LG Electronics are co-founders of the recently-established Korea Display Industry Association; and Defendants Orion, LG Electronics, LP Displays and Samsung SDI belong to the Electronic Display Industrial Research Association.

62. Defendants utilized their trade group memberships to meet, discuss, and collude on CRT pricing, and to monitor their conspiracy by exchanging sensitive information relating to CRT capacity and sales.

CLASS ACTION COMPLAINT                                - 11 -

63. During the Class Period, several Defendants consolidated and reduced manufacturing capacity in order to maintain artificially high CRT prices.

64. In July 2003, Mitsubishi Electric closed a five-year old CRT manufacturing facility in Mexico thereby reducing annual global capacity for 17 inch CRT computer monitors by 2.7 million units.

65. In December 2004, Defendant Matsushita Toshiba discontinued production of CRTs at its facility in New York noting the increasing popularity of flat panel televisions and declining demand for its CRT televisions.

66. Also in December 2004, Toshiba announced that it too would discontinue manufacturing traditional CRT televisions (though Toshiba brand CRT televisions continued to be manufactured by Defendant Orion).

67. Defendant LP Displays (then LG.Philips) ceased CRT tube production at its Durham, England facility in July 2005.

68. In December 2005, Defendant Matsushita Toshiba announced that by early 2006 it would close production facilities in Ohio and Germany as part of its focus on Asian markets.

69. In September 2005, Defendant Samsung SDI announced that it would close a CRT production facility in Germany by year end due to shrinking demand for bulky CRT televisions. (http://www.glassonweb.com/news/index/3875/).

70. Defendant Orion America closed a CRT manufacturing facility in Princeton, Indiana in July 2006.

71. Also in July 2006, Defendant Matsushita Toshiba announced it would cease production at its joint venture CRT factory in Malaysia.

72. Notwithstanding the market penetration of flat panel technology and predictions by analysts that CRT prices would drop, prices of CRT Products in fact remained stable, or unexpectedly increased, during the Class Period.

73. A shortage of components such as glass was cited by CRT makers as one reason why prices did not decline as expected, but such justifications were merely a pretext to cover up the ongoing conspiracy.

CLASS ACTION COMPLAINT                        - 12 -

74. Prices for CRT computer monitors did decrease during the Asian economic crisis of 1998, though not as significantly as would have been the case in a truly competitive market.

75. In early 1999, despite declining production costs and growing competition from flat panel displays, prices of larger CRT monitors increased.

76. The average prices of CRT Products also increased in 2000, again defying rational expectations after CRT makers had taken steps to reduce production costs and flat panel competition was continuing to cut into CRT sales.

77. The stability of CRT prices throughout the Class Period was the direct result of the conspiracy among Defendant, which was facilitated via direct communications (electronic mail, telephone discussions and meetings) regarding pricing, production capacity and development plans and inventory levels.

## IX. GOVERNMENT INVESTIGATIONS

78. Various governmental authorities, including the U.S. Department of Justice ("DOJ") via its Antitrust Division field office in San Francisco, are currently investigating anticompetitive conduct in connection with the CRT industry.

79. On November 8, 2007, news reports indicated that European Commission ("EC") officials had raided the offices of CRT manufacturers and a November 9, 2007 EC press release confirmed that: "The commission has reason to believe that the companies concerned may have violated EU rules against price-fixing, sharing markets or exchanging market information."

80. On November 9, 2007, it was reported that Defendants Matsushita Electric and Samsung were cooperating with Japanese antitrust authorities following raids on CRT production facilities and that the Korean Fair Trade Commission was investigating CRT makers affiliated with Samsung. One article suggested that Defendant Matsushita Toshiba had met several times with CRT makers in Korea and other Asian countries to discuss target prices for CRTs. (http://www.yomiuri.co.jp/dy/national/20071110TDY02302.htm)

81. On November 12, 2007, Defendant Chunghwa announced that it had received a subpoena issued by a federal grand jury in San Francisco.

82. On November 21, 2007, Defendant Koninklijke Philips confirmed that it (along with Defendant LP Displays) is being investigated as well. The *International Herald Tribune* reported that "competition authorities in several jurisdictions had started investigations," and that the company "would assist regulators."

83. Several Defendants have been the subject of multiple government investigations and private lawsuits based on cartel activity in recent years. Indeed, Samsung admitted guilt and paid a $300 million fine following an investigation by the DOJ into price-fixing among manufacturers of dynamic random access memory ("DRAM") computer chips and Samsung, Hitachi and Toshiba have all acknowledged being contacted by the DOJ as part of an ongoing investigation of price-fixing among manufacturers of static random access memory ("SRAM") computer chips. Samsung and Toshiba have also received subpoenas and announced their intent to cooperate with an ongoing DOJ investigation concerning Flash Memory technology used in various electronic storage devices.

84. In addition, certain Defendants named herein, including Samsung, Toshiba, and a joint venture between Defendants LG and Royal Philips, are among the subjects of an ongoing investigation by antitrust officials in the United States, Europe, Japan and Korea into cartel activity in the flat panel (LCD) industry.

## X. FRAUDULENT CONCEALMENT

85. Throughout the conspiracy, Defendants and their co-conspirators affirmatively and actively concealed their unlawful conduct from Plaintiff. Defendants and their co-conspirators conducted their conspiracy in secret and kept it mostly within the confines of their higher-level executives. Defendants and their co-conspirators publicly provided false justifications for stable or increased CRT prices during the Class Period. Defendants and their co-conspirators conducted their conspiracy in secret, concealed the true nature of their unlawful conduct and acts in furtherance thereof, and actively concealed their activities through various other means and methods to avoid detection. Plaintiff did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendants and their co-conspirators were violating the

CLASS ACTION COMPLAINT                - 14 -

010013-11 217995 V1

antitrust laws as alleged herein until November of 2007, when government investigations became public.

86. Plaintiff alleges that Defendants engaged in private meetings and communications in which they exchanged sensitive pricing and production information. Defendants agreed to conceal their unlawful conspiracy and provided false justifications for the inflated prices of CRTs during the Class Period.

87. As a result of the active concealment of the conspiracy by Defendants and their co-conspirators, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## XI. ANTITRUST INJURY

88. The conspiracy among Defendants caused injury to Plaintiff and members of the Class by suppressing price competition among CRT manufacturers in the United States, thereby depriving purchasers of CRT Products the benefits of a competitive market and setting prices of CRT Products at artificially high levels.

89. As a direct result of Defendants' conspiracy, Plaintiff and members of the Class have been injured in their business and property in that they paid more for CRT Products than otherwise would have been the case in a competitive market.

## XII. CLAIM FOR VIOLATIONS OF 15 U.S.C. § 1

90. Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

91. Beginning at least as early as January 1, 1995, the exact date being unknown to Plaintiff and exclusively within the knowledge of Defendants, Defendants and their co-conspirators entered into a continuing contract, combination or conspiracy to unreasonably restrain trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) by artificially reducing or eliminating competition in the United States.

92. Specifically, Defendants combined and conspired to raise, fix, maintain or stabilize the prices of CRT Products sold in the United States.

010013-11 217995 V1

93. Defendants succeeded in raising, fixing, maintaining and stabilizing CRT Products in the United States during the Class Period.

94. The conspiracy among Defendants consisted of a continuing agreement, understanding and concerted action among Defendants and their co-conspirators.

95. For purposes of formulating and effectuating their conspiracy, Defendants and their co-conspirators did those things they contracted, combined, or conspired to do, including:

    a. Participating in meetings and conversations to discuss the prices and supply of CRT Products;

    b. Communicating in writing and orally to fix prices;

    c. Agreeing to manipulate prices and supply of CRT Products sold in the United States in a manner that deprived direct purchasers of free and open competition;

    d. Issuing price announcements and price quotations in accordance with the agreements reached;

    e. Selling CRT Products to customers in the United States at noncompetitive prices; and

    f. Providing false statements to the public to explain increased prices for CRT Products.

96. As a result of Defendants' unlawful conduct, Plaintiff and the other members of the Class have been injured in their businesses and property in that they have paid more for CRT Products than they otherwise would have paid in a competitive market.

### XIII.  DAMAGES

97. During the Class Period, Plaintiff and members of the Class purchased CRT Products directly from Defendants, or their affiliates, and paid artificially high prices due to the antitrust violations alleged herein. As a result, Plaintiff and the other members of the Class sustained damages to their business and property in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment on its behalf and on behalf of the Class herein, adjudging and decreeing that:

1  A. This action may proceed as a class action, with Plaintiff as the designated Class representative and its counsel as Class Counsel.

B. Defendants have engaged in a contract, combination and conspiracy in violation of Section One of the Sherman Act, 15 U.S.C. § 1, and that Plaintiff and members of the Class have been injured in their business and property as a result of Defendants' violations.

C. Plaintiff and members of the Class recover damages sustained by them, as provided by the federal antitrust laws, and that a joint and several judgment in favor of Plaintiff and the Class be entered against the Defendants in an amount to be trebled in accordance with such laws.

D. Defendants, their subsidiaries, affiliates, successors, transferees, assignees and the respective officers, directors, partners, agents and employees thereof and all other persons acting or claiming to act on their behalf be permanently enjoined and restrained from continuing and maintaining the combination, conspiracy or agreement alleged herein.

E. Plaintiff and members of the Class be awarded pre-judgment and post-judgment interest, and that such interest be awarded at the highest legal rate from and after the date of service of the initial complaint in this action;

F. Plaintiff and members of the Class recover their costs of this suit, including reasonable attorneys' fees as provided by law; and

G. Plaintiff and members of the Class receive such other or further relief as may be just and proper.

## JURY TRIAL DEMANDED

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all of the claims asserted in this Complaint so triable.

Dated: January 16, 2008

HAGENS BERMAN SOBOL SHAPIRO LLP

By: _____
JEFF D. FRIEDMAN (173886)

715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000

CLASS ACTION COMPLAINT — - 17 -

010013-11 217995 V1

Facsimile: (510) 725-3001
jefff@hbsslaw.com

Anthony D. Shapiro
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
tony@hbsslaw.com

Steven A. Kanner
William London
Douglas A. Millen
FREED KANNER LONDON & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Facsimile: (224) 632-4521
skanner@fklmlaw.com
blondon@fklmlaw.com
dmillen@fklmlaw.com

Attorneys for Plaintiff and the Class